**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:25-cv-00253

BRENDA GEIGER, IRINA VORONINA, JANET GUZMAN, ROSA ACOSTA, SANDRA VALENCIA, STEPHANIE RAO and RACHEL MORTENSON,

Plaintiffs,

v.

KLIMAX, LLC d/b/a LA JARRA NIGHT CLUB,

Defendant.

---

**PLAINTIFFS' COMPLAINT AND JURY DEMAND**

---

Plaintiffs BRENDA GEIGER, IRINA VORONINA, JANET GUZMAN, ROSA ACOSTA, SANDRA VALENCIA, STEPHANIE RAO and RACHEL MORTENSON, (collectively, "Plaintiffs"), file this Complaint against KLIMAX, LLC, d/b/a La Jarra Night Club ("Defendant") respectfully allege as follows:

## BACKGROUND

1. This is an action for damages and injunctive relief relating to Defendant's misappropriation, alteration, and unauthorized publication and use in advertising of images of Plaintiffs, each of whom are well-known professional models, to promote their night club, La Jarra Night Club located at 15491 E Mississippi Ave, Aurora, Colorado 80017 (hereinafter referred to as the "Night Club" or "La Jarra").

2. As detailed below, Defendant's misappropriation and unauthorized use of Plaintiffs' images, photos and likenesses (collectively, "Images") constitutes: a) Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(A) - False Association; b) Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(B) - False Advertising; c) State Common Law

Misappropriation of Likenesses Violation of Right to Privacy; Right of Publicity; and d) Negligence and Respondeat Superior.

3. In addition to the actual, compensatory, and exemplary damages set forth below, Plaintiffs likewise seek an Order from this Court permanently enjoining Defendant from using any of their Images in any way and through any medium.

## **JURISDICTION & VENUE**

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs have stated claims under the Lanham Act, 15 U.S.C. § 1125(a)(1).

5. This Court has jurisdiction over the state law claims asserted, pursuant to 28 U.S.C. § 1367.

6. Plaintiffs are, and at all times relevant to this action have been, professional models who reside throughout the United States.

7. According to publicly available records, Defendant KLIMAX, LLC, is a limited liability company formed under the laws of the state of Colorado, with its principal place of business located at 15491 E Mississippi Ave, Aurora, Colorado, 80017. Upon information and belief, KLIMAX, LLC operates La Jarra Night Club, which is located at 15491 E Mississippi Ave, Aurora, Colorado 80017.

8. Venue is proper in the United States District Court for the District of Colorado because Defendant's principal place of business is located in Aurora, Colorado, Arapahoe County.

9. A significant portion of the alleged causes of action arose and accrued in Aurora, Colorado and the center of gravity for a significant portion of all relevant events alleged in this complaint is predominately located in Aurora, Colorado.

## **PARTIES**

***Plaintiffs***

10. Plaintiff Brenda Geiger ("Geiger") is a well-known professional model, and a resident of Onondaga County, New York.

11. Plaintiff Irina Voronina ("Voronina") is a well-known professional model, and a

resident of Orange County, California.

12. Plaintiff Janet Guzman ("Guzman") is a well-known professional model, and a resident of Los Angeles County, California.

13. Plaintiff Rosa Acosta ("Acosta") is a well-known professional model, and a resident of Los Angeles County, California.

14. Plaintiff Sandra Valencia ("Valencia") is a well-known professional model, and a resident of Colombia.

15. Plaintiff Stephanie Rao ("Rao") is a well-known professional model, and a resident of Los Angeles County, California.

16. Plaintiff Rachel Mortenson ("Mortenson") is a well-known professional model, and a resident of Los Angeles County, California.

***Defendant***

17. Defendant, KLIMAX, LLC d/b/a La Jarra Night Club d/b/a La Jarra, is a limited liability company formed under the laws of the state of Colorado and registered to conduct business in Colorado. During times relevant to this action, KLIMAX, LLC operated La Jarra Night Club.

18. Service of process may be perfected upon Defendant KLIMAX, LLC d/b/a La Jarra Night Club by serving the registered agent for service of process, Gustavo Estrada, who can be located at 15491 E Mississippi Ave, Units A & B, Aurora, CO 80017.

## FACTUAL ALLEGATIONS

19. Each Plaintiff is a well-known professional model who earns her livelihood modeling and licensing her Images to companies, magazines and individuals for the purpose of advertising products and services.

20. Plaintiffs' careers in the modeling industry place a high degree of value on their good will and reputation, which is critical to maximize their earning potential, book modeling contracts, and establish each of their individual brands. In furtherance of establishing, and maintaining, their brands, Plaintiffs are necessarily selective concerning the companies, and brands, for which they model.

21. Each of the Plaintiffs' Images was misappropriated, and intentionally altered, by Defendant to make it appear that they worked at, endorsed, or were otherwise associated or affiliated with Defendant.

22. In the case of each Plaintiff, this apparent claim was false.

23. Moreover, this misappropriation occurred without any Plaintiff's knowledge, consent, or authorization.

24. No Plaintiff has ever received any remuneration for Defendant's improper and illegal use of their Images, and Defendant's improper and illegal use of Plaintiffs' Images have caused each Plaintiff to suffer substantial monetary damages and harm to reputation.

25. Further, in certain cases Defendant misappropriated Plaintiffs' advertising ideas because the Images they misappropriated came from Plaintiffs' own social media pages, which each Plaintiff uses to market to potential clients, grow their fan base, and build and maintain their brand.

***Plaintiffs' Individual Backgrounds and Careers***

26. Geiger is a professional model and actress who performed with eight-time Grammy nominee rapper Lil Wayne in a music video for two-time Grammy nominee singer Keri Hilson. She is most known for her work in Glamour Magazine and her appearance on "The Howard Stern Show" in a "Miss HTV March" contest. Geiger has appeared in numerous magazines such as Show, Maxim and Raw, and has modeled for several product campaigns such as Primitive Clothing, where she currently has her own line of custom skateboard decks.

27. That we know of, Geiger is depicted in the photo in Exhibit "A" to promote La Jarra on its Facebook page. This Image was intentionally altered to make it appear that Geiger was either an employee working at La Jarra, that she endorsed La Jarra, or that she was otherwise associated or affiliated with La Jarra.

28. Geiger has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and

will continue to suffer, damages as a result of same.

29. Voronina is an international model and actress. After becoming Playboy's Miss January 2001, she represented international brands including SKYY Vodka, Miller Lite, Michelob Ultra, Bacardi, and Sisley & Detour to name a few. She has millions of visual impressions around the globe via the covers and pages of worldwide magazines such as FHM, Maxim, Playboy (in 20 countries), Max, Ocean, Shape, 944, Knockout, Q, People, Kandy, Rukus, Vape and Browz magazines. In 2008, Voronina was named St. Pauli Girl spokes model and completed a 12-month PR tour across America. She became the first ever St. Pauli Girl to ring the NYSE closing bell representing Constellation Brands. In 2013, Voronina was named Kandy Magazine's Model of the Year as a result of her fans downloading the highest number of digital issues that year. Voronina got her first big screen break in "Reno 911! Miami.". Her credits include a series regular role in the fully improvised sitcom "Svetlana" for HD Net, the first ever live action show on Adult Swim Network "Saul of the Mole Men," guest star appearance on Nickelodeon's "iCarly," Comedy Central's "Reno 911!", and feature film parts in "Balls of Fury," & "Piranha 3DD," "Laser Team," and "Killing Hasselhoff." She starred in the indie action flick "Scramble" which she also co-produced. Voronina tours and performs nationally as a stand-up comedian. She loves connecting with her fans and stays active daily across all social media outlets for her followers on Facebook, Instagram, X (formerly known as Twitter) and YouTube. She has more than 5.6 million social media followers. [1]

30. That we know of, Voronina is depicted in the photo in Exhibit "B" to promote La Jarra on its Facebook page. This Image was intentionally altered to make it appear that Voronina was either an employee working at La Jarra, that she endorsed La Jarra, or that she was otherwise associated or affiliated with La Jarra.

31. Voronina has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has

[1] In the modeling world and talent industry (in general), the number of online Instagram "followers", X "followers", and or Facebook "likes" is a strong factor in determining a model's earning capacity.

received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

32. Guzman is a social media star who is widely known for her self-titled Instagram page. She has gained popularity there for her modeling and lifestyle photos, surpassing over 2 million followers. She's widely known to be Fashion Nova's number 1 featured talent. She mostly promotes the clothes of the Fashion Nova clothing brand on her Instagram and has also appeared on the Fashion Nova Billboard located at Melrose and Fairfax (California). She was featured in an exclusive video interview with Fashion Nova in March of 2022. She has also seen her janetguzman_TikTok channel become widely popular, with her videos on the platform earning over 1.9 million total likes. She also runs a popular OnlyFans subscription account and a travel/lifestyle/fashion vlog on YouTube.

33. That we know of, Guzman is depicted in the photos in Exhibit "C" to promote La Jarra on its Facebook page and Instagram account. These Images were intentionally altered to make it appear that Guzman was either an employee working at La Jarra, that she endorsed La Jarra, or that she was otherwise associated or affiliated with La Jarra.

34. Guzman has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

35. Acosta started her classic ballet studies at the age of four at the Centro de la Cultura in Santiago, Dominican Republic. She later moved on to the ICA, (Instituto de Cultura y Arte), where she excelled as one of the most gifted students of the academy. After graduating with honors from the ICA and the Ballet School of Norma Garcia with a bachelor's in art with mention to Classic Ballet, she became part of the Dominican Nacional Ballet as the youngest soloist member in 2002. Partaking in all major classic and modern shows in the Dominican Republic, she was nominated twice by the Secretaria de Estado de la Juventud for her work in the category of Cultural Development. She initiated her modeling career in 2004, participating in magazines and television

for prestigious Dominican enterprises. Acosta moved to the United States in 2006 where her career took a new turn, distinguishing herself in several areas of the modeling world, featuring in magazines, radio, television programs and commercials and numerous music videos. She has over 52 thousand Facebook followers, over 1.6 million Instagram followers, and over 280,600 X (formerly known as Twitter) followers.

36. That we know of, Acosta is depicted in the photo in Exhibit "D" to promote La Jarra on its Facebook page. This Image was intentionally altered to make it appear that Acosta was either an employee working at La Jarra, that she endorsed La Jarra, or that she was otherwise associated or affiliated with La Jarra.

37. Acosta has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

38. Valencia is, and at all times relevant to this action, is a successful professional model with numerous accomplishments. She is regarded as one of the top models in her home country of Colombia. Valencia has modeled in Ecuador, Peru, The Dominican Republic, Mexico and Venezuela. She has worked with clients such as Diesel, Americanino, Leonisa, Chevignon, and Onde de Mar, and is the contract face of Bésame Lingerie. She currently has 151 thousand Instagram followers and over 72.3 thousand X (formerly known as Twitter) followers.

39. That we know of, Valencia is depicted in the photos in Exhibit "E" to promote La Jarra on its Facebook page. These Images were intentionally altered to make it appear that Valencia was either an employee working at La Jarra, that she endorsed La Jarra, or that she was otherwise associated or affiliated with La Jarra.

40. Valencia has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

41. Rao who is originally from Miami, FL currently resides in Los Angeles and is an influencer/model. She is currently representing Fashion Nova and has previously worked for Shein & PrettyLittleThing. She has appeared alongside Kim Kardashian in a Carolina Lemke glasses advertisement as well as other high profile ad campaigns. She has her own website which focuses on providing a fitness journey to her clients and promoting physical, mental, and spiritual wellness. Rao has over 1.1 million Instagram followers.

42. That we know of, Rao is depicted in the photos in Exhibit "F" to promote La Jarra on its Facebook page and Instagram account. These Images were intentionally altered to make it appear that Rao was either an employee working at La Jarra, that she endorsed La Jarra, or that she was otherwise associated or affiliated with La Jarra.

43. Rao has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

44. Mortenson signed with a modeling agency since 2009. She signed with Ford models, La Models, Next Models Miami, and an agency in New York. Mortenson is the face of hundreds of campaigns from beauty brands, fashion houses, and swim and lingerie brands. In addition, Mortenson is currently the face of Guess Jeans and has been for nine years running. Mortenson has been the face of Fredrick's of Hollywood for over four years. She was also on two covers of *Playboy Magazine* in the same year. In addition, Mortenson was featured in magazines such as *Vogue, Vanity Fair, Rolling Stones, GQ,* and *Sports Illustrated*. Mortenson has walked and opened for runways shows such as Yeezy, Michael Costello, Guess Jeans, Max Mara, Beach Bunny, Escada, and Marciano.

45. That we know of, Mortenson is depicted in the photos in Exhibit "G" to promote La Jarra on its Facebook page and Instagram account. These Images were intentionally altered to make it appear that Mortenson was either an employee working at La Jarra, that she endorsed La Jarra, or that she was otherwise associated or affiliated with La Jarra.

46. Mortenson has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same

***Defendant's Business Activity and Misappropriation***

47. Defendant operates (or operated, during the relevant time period,) a so-called Night Club, where they are (or were) engaged in the business of selling alcohol and food in a sexually charged atmosphere.

48. Defendant owns, operates, and controls La Jarra's social media accounts, including its Facebook, Twitter, and Instagram accounts.

49. Defendant used La Jarra's Facebook, Twitter, and Instagram accounts to promote La Jarra's, and to attract patrons.

50. Defendant did this for its own commercial and financial benefit.

51. Defendant has used, advertised, created, printed, and distributed the Images of Plaintiffs, as further described and identified above, to create the false impression with potential clientele that each Plaintiff either worked at La Jarra, endorsed La Jarra, or was otherwise associated or affiliated with La Jarra.

52. Defendant used Plaintiffs' Images and created the false impression with the public that Plaintiffs worked at or endorsed La Jarra to receive certain benefits from that false impression, including but not limited to: monetary payments; increased promotional, advertising, marketing, and other public relations benefits; notoriety; publicity; and an increase in business revenue, profits, proceeds, and income.

53. Defendant was well aware that none of the Plaintiffs have ever been affiliated with or employed by La Jarra, and at no point have any of the Plaintiffs ever endorsed La Jarra or otherwise been affiliated or associated with La Jarra.

54. All of Defendant's activities, including their misappropriation and republication of Plaintiffs' Images, were done without the knowledge or consent of Plaintiffs.

55. Defendant has never compensated Plaintiffs for the unauthorized use of Plaintiffs' Images.

56. Plaintiffs have never received any benefit from Defendant's unauthorized use of their Images.

***Standard Business Practices in the Modeling Industry***

57. It is common knowledge in the modeling industry that the hiring of a model for a commercial purpose involves a particularized methodology and process.

58. The fee that a professional model, like each Plaintiff, will receive is negotiated by their agency, and involves consideration of, without limitation, at least the following factors: a) the reputation, earning capacity, experience, and demand of that particular model; b) where and how long the photo shoot takes place; c) where and how the images are going to be used by the client (*e.g.*, company website, social media, television commercials, billboards, or posters), known in the modeling industry as "usage"; and, d) the length of time the rights to use the photos will be assigned, known in the modeling industry at the "term."

59. Most licenses to use a model's image are for one, two, or three year terms; but almost never is there a "lifetime" term.

***Defendant's Misappropriation of Plaintiffs' Images***

60. Defendant was aware that, by using Plaintiffs' Images, they were violating Plaintiffs' right to privacy, Plaintiffs' right of publicity, and creating a false impression to potential customers that Plaintiffs worked at or endorsed La Jarra.

61. Unauthorized use of Plaintiffs' Images deprives them of income they are owed relating to the commercialization of their Images.

62. In addition, Plaintiffs allege that any the improper unauthorized use of their Images at issue in this case has substantially injured their respective careers and reputations, because of the negative connotations of false impression of association with La Jarra.

63. At no point was any Plaintiff ever contacted by any Defendant, or any representative of any Defendant, to request the use of any of Plaintiffs' Images.

64. No Defendant ever obtained, either directly or indirectly, permission to use any of Plaintiffs' Images.

65. No Defendant ever paid any Plaintiff for its use of her Images on any promotional materials, including La Jarra's website, Twitter, Facebook, or Instagram accounts.

66. Defendant used Plaintiffs' Images without their consent, and without providing remuneration, in order to permanently deprive each of the Plaintiffs of her right to use her Images.

**FIRST CAUSE OF ACTION**
**(Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(A) - False Association)**

67. Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

68. Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendant, and protects Plaintiffs from the conduct described herein

69. Defendant used Plaintiffs' image in order to create the false impression with the public that Plaintiffs either worked at Defendant's establishment, or endorsed Defendant' businesses. This was done to promote and attract clientele to Defendant's establishment, and thereby generate revenue for Defendant.

70. Thus, this was done in furtherance of Defendant's commercial benefit.

71. Plaintiffs are in the business of commercializing their identity and selling their images to reputable brands and companies for profit. Defendant's customers are the exact demographic that view Plaintiffs' images in magazines and online. By virtue of Plaintiffs' use of their image and identify to build their brand, they have acquired a distinctiveness through secondary meaning. Plaintiffs' images either suggests the basic nature of their product or service, identifies the characteristic of their product or service, or suggest the characteristics of their product or service that requires an effort of the imagination by the consumer in order to be understood as descriptive. As such, their brand – the reason their clients seek to hire them – is unique in that it is encompassed in their identity, i.e., their persona.

72. Both Plaintiffs and Defendant compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group.

73. As such, an unauthorized use of Plaintiffs' images image to promote a establishment created an undeniable confusion in Defendant consumers' minds, which lead to competitive injury to Plaintiffs. There is no doubt that Defendant used Plaintiffs' images for advertising purposes, that is to promote their business enterprises, as such, Defendant's unauthorized and unlawful use of Plaintiffs' image and likeness was an existing intent to commercialize an interest in Plaintiffs' images image and likeness

74. Defendant's use of Plaintiffs' images, likenesses and/or identities constitutes a false designation of the source of origin, sponsorship, approval, or association which have deceived Plaintiffs' fans and present and prospective clients into believing that Defendant's establishment advertisements are endorsed by Plaintiffs, or sponsored, approved or associated with Plaintiffs.

75. Despite the fact that Defendant was at all times aware that Plaintiffs neither worked at, nor endorsed their establishment, nevertheless, they used Plaintiffs' image in order to mislead potential customers as to Plaintiffs' employment at and/or affiliation with Defendant's establishment

76. Defendant knew that its use of Plaintiffs' image would cause consumer confusion as to Plaintiffs' sponsorship and/or employment at Defendant' establishment.

77. Upon information and belief, Defendant's use of Plaintiffs' image did in fact cause consumer confusion as to Plaintiffs' employment at and/or endorsement of Defendant's businesses, and the goods and services provided by Defendant.

78. As a direct and proximate result of Defendant's actions, Plaintiffs have no control over the nature and quality of the line of products or services provided by Defendant, the nature of the advertisements depicting Plaintiffs' image, likeness and/or identity, or how Plaintiffs' image, likeness and/or identity is being depicted by Defendant.

79. Further, any failure, neglect or default by Defendant will reflect adversely on

Plaintiffs as the believed source of origin, sponsorship, approval or association thereof, hampering efforts by Plaintiffs to continue to protect their reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote their personal modeling services to legitimate mainstream media, all to the irreparable harm of Plaintiffs.

80. Due to Defendant's unauthorized use of Plaintiffs' image, Plaintiffs been damaged in an amount to be determined at trial. WHEREFORE, Plaintiffs respectfully request that the Court enter a judgment against Defendant and grant actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

**SECOND CAUSE OF ACTION**
**(Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(B) - False Advertising)**

81. Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

82. Section 43 of the Lanham Act, 15 U.S.C. § 1125, et seq. applies to Defendant and protects Plaintiffs from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . .". 15 U.S.C. §1125(a)(1)(B).

83. Defendant used Plaintiffs' image, likeness and/or identity as described herein without authority in order to create the perception that Plaintiffs worked at or were otherwise affiliated with Defendant's establishment, endorsed Defendant's businesses and activities, and/or consented to or authorized Defendant to use their image in order to advertise, promote, and market Defendant's businesses, Defendant's establishment, and/or Defendant's establishment events and activities.

84. Defendant's use of Plaintiffs' image, likeness and/or identity to advertise, promote

and market Defendant's businesses, Defendant's establishment, and/or Defendant's events and activities as described in this Complaint was false and misleading.

85. Defendant's unauthorized use of Plaintiffs' image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Plaintiffs worked at or were otherwise affiliated with Defendant's establishment, endorsed Defendant's businesses, Defendant's establishment or Defendant's events or activities, or consented to or authorized Defendant's usage of her image in order to advertise, promote, and market Defendant's businesses or Defendant's events and activities and/or that Plaintiffs would participate in or appear at the specific events promoted in the advertisements.

86. Defendant's false advertising described above have the capacity or tendency to confuse consumers, including actual and prospective patrons of Defendant's establishment, as to the general quality of attendees and participants of Defendant's establishment and in their events, as well as specifically whether Plaintiffs worked at or were otherwise affiliated with Defendant's establishment, endorsed Defendant's businesses, Defendant's establishment or Defendant's establishment events or activities, or consented to or authorized Defendant's usage of their image in order to advertise, promote, and market Defendant's businesses or Defendant's establishment events and activities.

87. Upon information and belief, Defendant's false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Plaintiffs worked at or was otherwise affiliated with Defendant's establishment, endorsed Defendant's businesses, or Defendant's establishment events and activities, or consented to or authorized Defendant's usage of her image in order to advertise, promote, and market Defendant's businesses or Defendant's establishment events and activities. Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to join Defendant's establishment, visit Defendant's establishment, and participate in events at Defendant's establishment and had a material effect and impact on the decision of members and prospective members and participants to join Defendant's establishment, visit Defendant's establishment and

take part in the events at Defendant's establishment.

88. Defendant's unauthorized use of Plaintiffs' image, likeness and/or identity as described herein was designed to benefit Defendant's businesses interests by, among other things, promoting Defendant's establishment and their activities and attracting clientele to Defendant's establishment.

89. Defendant knew or should have known that their unauthorized use of Plaintiffs' image, likeness and/or identity would cause consumer confusion as described in this Complaint.

90. Defendant's unauthorized use of Plaintiffs' image, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

91. Defendant's wrongful conduct as described herein was willful.

92. As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

93. Defendant had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Plaintiffs of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Plaintiffs.

94. The method and manner in which Defendant used the image of Plaintiffs further evinces that Defendant was aware of or consciously disregarded the fact that Plaintiffs did not consent to Defendant's use of their image to advertise Defendant's businesses.

95. Defendant has caused irreparable harm to Plaintiffs, their reputation and brand by attributing to Plaintiffs the establishment lifestyle and activities at Defendant's establishment.

96. Defendant's unauthorized use of Plaintiffs' image, likeness and/or identity directly and proximately caused and continue to cause damage to Plaintiffs in an amount to be determined at trial.

## **THIRD CAUSE OF ACTION**
**(State Common Law Misappropriation of Likenesses)**
**Violation of Right to Privacy; Right of Publicity**

97. Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and

incorporate the same by reference as though fully set forth herein.

98. Plaintiffs hold the exclusive right to control the public dissemination of their names and likenesses for commercial use.

99. Defendant may not, and owe a duty not to, publish, print, display, or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, image, photograph, or other likeness of the Plaintiffs without their express consent to such use.

100. The Plaintiffs never consented to, permitted, assigned, licensed, or otherwise agreed to Defendant's use of their images, likenesses, or identities to advertise, promote, market, or endorse the Defendant's business or activities, or for any other commercial or other purpose;

101. Nevertheless, Defendant published, printed, displayed, and/or publicly used the Plaintiffs' images, likenesses, and identities on its social media sites for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising, and marketing Defendant and its events and activities, and to lure customers and drive traffic to Defendant.

102. Defendant used Plaintiffs' images, likenesses, and/or identities as described herein intentionally, without authority and to its commercial benefit in order to, inter alia, create the false perception that the Plaintiffs worked at, would appear at, or were otherwise affiliated with Defendant, endorsed Defendant or Defendant's business activities, and/or consented to or authorized Defendant' usage of their images, likenesses, and/or identities in order to advertise, promote and market Defendant's business activities.

103. Defendant's use of the Plaintiffs' images, likenesses, and identities to advertise, promote, and market Defendant's business, events, and activities as described in this Complaint was false, misleading, and a misrepresentation of fact.

104. The Plaintiffs' readily identifiable bodies and faces are shown in the well-lighted images used by Defendant.

105. Defendant misappropriated Plaintiffs' images and likenesses without notice or knowledge to the Plaintiffs and without even attempting to acquire Plaintiffs' permission.

106. Plaintiffs did not give Defendant permission to use their images or likenesses.

107. Defendant's unauthorized appropriation and continuous use of the Plaintiffs' images, likenesses, and/or identities, as described herein, violated Plaintiffs' common law rights of privacy and specifically, their right to publicity.

108. The Defendant acted intentionally or recklessly by selecting Plaintiffs' images and, knowing it did not have permission to use the images for commercial gain, by posting the images on Defendant's social media sites in an effort to market the Defendant's establishment business and its events and activities.

109. Defendant is in the entertainment business, and knew or should have known of the standard negotiation process over terms of use, conditions of release, licensing issues, and other contractual incidences related to use and exploitation of a professional model's image and likeness for Defendant's commercial benefit.

110. Nevertheless, Defendant circumvented the appropriate licensing and negotiating process, thereby avoiding payment to Plaintiffs, the cost of a photoshoot, payments to Plaintiffs' agents or agencies, and the costs of licensing, totaling a substantial sum of money and resulting in damage to the Plaintiffs and a windfall to the Defendant.

111. Defendant has caused and will continue to cause irreparable harm and damage to the Plaintiffs, their reputations, and their brands, by falsely attributing to the Plaintiffs their involvement with or endorsement of Defendant's establishment and Plaintiffs' association with events and activities relating thereto.

112. Defendant has damaged Plaintiffs as a direct, foreseeable, and proximate result of their unauthorized use of Plaintiffs' images, likenesses, and/or identities without compensating Plaintiffs, thereby entitling Plaintiffs to recover in money damages the actual and fair market value of each misappropriated use of their images and likenesses, and damages for reputational harm, in amounts to be established by proof at trial.

113. As a further direct and proximate result of Defendant's conduct as alleged herein, Defendant has earned and withheld profits attributable directly or indirectly to the unlawful use of Plaintiffs' images, entitling Plaintiffs to disgorgement of those ill-gotten gains in an amount to be

established by proof at trial.

114. As further direct and proximate result of Defendant's conduct as alleged in here, Plaintiff have experienced mental and emotional anguish and suffering

**FOURTH CAUSE OF ACTION**
**(Negligence and Respondeat Superior)**

115. Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

116. Plaintiffs are further informed and believe and herein allege that Defendant maintains or should have maintained employee policies and procedures which govern the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes which specifically prevent the unauthorized and non-consensual use of intellectual property, publicity rights and/or the image and likeness of individuals for promotional and advertising purposes.

117. Further, Defendant should have maintained, or failed to maintain, policies and procedures to ensure that its promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

118. Defendant owed a duty of care to Plaintiffs to ensure that its advertising and promotional materials and practices did not infringe on Plaintiffs' property and publicity rights.

119. Defendant further owed a duty of care to consumers at large to ensure that its promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

120. Defendant breached its duty of care to both Plaintiffs and consumers by failing to either adhere to or implement policies and procedures to ensure that the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes were not unauthorized, non-consensual, or false and deceptive.

121. Defendant further failed to enforce or implement the above-stated policies and/or

to communicate them to employees, and/or supervise its employees in order to ensure that these policies, along with federal and Colorado law, were not violated. Defendant breached its duty of care to Plaintiffs and consumers by its negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

122. Defendant's breach was the proximate cause of the harm Plaintiffs suffered when their Image was published without their consent, authorization and done so in a false, misleading, and/or deceptive manner.

123. As a result of Defendant's negligence, Plaintiffs have suffered damages in an amount to be determined at trial, but which in all events are in excess of seventy-five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

**DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury.

**PRAYER FOR RELIEF**

Plaintiffs respectfully request Judgment in their favor and against Defendant as follows:

(a) For actual damages, in an amount to be determined at trial, relating to Plaintiffs' Causes of Action;

(b) For an order permanently enjoining Defendant from using Plaintiffs' Images to promote La Jarra's Night Club;

(c) For punitive damages and treble damages under the Lanham Act, 15 U.S.C. § 1117 and S.C. Code Ann. § 39-5-10, *et seq*.;

(d) For all costs and attorneys' fees incurred by Plaintiffs in the prosecution of this Action pursuant to the Lanham Act, 15 U.S.C.§ 1117 and S.C. Code Ann. § 39-5-10, *et seq*.;

(e) For such other and further relief as the Court may deem just and proper.

Dated: January 24, 2025.
Chicago, Illinois

/s/ Joseph N. Casas
Joseph N. Casas

Illinois Bar No. 6274674
California Bar No. 225800
**THE CASAS LAW FIRM, P.C.**
401 North Michigan Avenue
Suite 1200
Chicago, Illinois 60611
Tel: 855-267-4457
Fax: 855-220-9626
joseph@talentrights.law

/s/ John V. Golaszewski
John V. Golaszewski
New York Bar No. 4121091
**THE CASAS LAW FIRM, P.C.**
1740 Broadway, 15th fl.
New York, NY 10019
Tel: 855-267-4457
Fax: 855-220-9626
john@talentrights.law